IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHANNON COPELAND,
     Petitioner,

vs.                                                            Case No.:  4:14cv631/MW/EMT

JULIE L. JONES,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus

filed under 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed a motion to dismiss the

petition as untimely, with relevant portions of the state court record (ECF No. 16).

Petitioner responded in opposition to the motion (ECF Nos. 19, 28).

The case was referred to the undersigned for the issuance of all preliminary

orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).

After careful consideration of all issues raised by the parties, it is the opinion of the

undersigned that no evidentiary hearing is required for the disposition of this matter,

Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned

that the pleadings and attachments before the court show that the habeas petition

should be dismissed as untimely.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner challenges the judgment of conviction and sentence entered in the

Circuit Court in and for Liberty County, Florida, Case No. 2007-CF-60 (ECF No. 1

at 1).  The procedural background of that case is established by the state court record

submitted by Respondent (ECF No. 16).[1]  Petitioner was charged with one count of

resisting a law enforcement officer with violence (Ex. D).  Petitioner was arrested on

May 17, 2007 (*see* Ex. B).  The arrest report sets forth the following factual basis for

the charge:

> On the above date [05-17-2007] at appx. 1115 hrs, I Deputy Phinney was
> dispatched to 11276 NW Lake Mystic Road in Bristol, FL, in reference
> of [sic] a verbal altercation.  Upon arrival I made contact with James
> Copeland which is Shannon Copeland's father.  Mr. Copeland stated that
> he needed a deputy to try to talk to Shannon that she was acting out and
> would not take her medication for mental illness.  Mr. Copeland invite
> [sic] me into his home to talk with Shannon at which time Shannon saw
> me coming.  She then grabbed the telephone and started yelling at her
> father and myself.  Shannon then left the room and locked herself into
> the bathroom and called someone to come get her.  I then tried to talk
> with Shannon through the bathroom door and she kept telling me to
> leave that [sic] she was not crazy and was not going back to the mental
> hospital.  I ask [sic] Shannon to open the door so we could talk that [sic]
> nobody was there to hurt her or take her away.  At which time she called
> me a freak and she stated that she was not going to take her medicine,
> she was fine.  She then climbed out the bathroom window and ran.  After

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to
Respondent's motion to dismiss (ECF No. 16) unless otherwise indicated.  Additionally, if a cited
page has more than one page number, the court cites to the "Bates stamp" page number.

seeing the bathroom window open on the outside of the house, I went back to my patrol car to start looking for her.  It was confirmed that [Martin] County had two warrants for Shannon's arrest.  At this time Mr. Copeland was talking to Johnette Wahlquist.  I told Mr. Copeland that there was two active warrants for Shannon's arrest, and if they saw which way she ran I needed to know.  Mrs. Wahlquist stated that Shannon had called her and wanted her to pick her up, that she was at the neighbor's house.  I instructed Mrs. Wahlquist to pick up Shannon.  At which time I waited up the road.  I then spotted Shannon in Mrs. Wahlquist's vehicle, at which time I conducted a traffic stop on Mrs. Wahlquist's vehicle at the corner of SR 12 and Harvel Street.  Shannon attempted to run but instead she grabbed Mrs. Wahlquist around the head and neck area, as I instructing [sic] her that she was under arrest on two warrants.  I then grabbed her right arm to remove her from the vehicle. She was pulling and yelling [that] nobody was taking her to jail, she was not going back to the mental hospital.  At which time I removed her left arm that she had around Mrs. Wahlquist's neck enough for Mrs. Wahlquist to free herself.  I then pulled Shannon out on the ground and placed her in handcuffs.  She continued to resist and pull away until she was secured in the back of my patrol car and transported to the Liberty County jail.  Upon arriving at the Liberty County jail, Shannon would not exit my patrol car.  Shannon was then removed by myself and Lt. Chad Smith, and escorted into the jail.  At which time Shannon was placed in the holding cell where she began to get hostile with Lt. Smith and Captain Partridge.  Shannon was then sprayed with a one second blast of pepper spray by Lt. Smith.  After trying to calm Shannon to book her on the two warrants from [Martin] County, she became irate again and started spitting toward myself and Captain Partridge, and another one second blast of pepper spray was deployed by Captain Partridge. Shannon was then placed back into the holding cell where Shannon urinated in [sic] the floor.  Shannon then scooped the urine up into her hands and threw it on myself, Captain Partridge, and Deputy Partridge that was standing directly in front of the holding cell.  At this time, Deputy Partridge deployed the M-26 taser, striking Shannon, one prong striking her in the lower chest area, and the other prong in the lower

stomach area.  Shannon then complied.  EMS was notified to evaluate
Shannon after being tased with the M-26.

(Ex. B).  The Sheriff's Office requested that the prosecutor charge Petitioner with one

count of resisting arrest with violence, and one count of battery on a law enforcement

officer by expelling certain fluids (*see id.*); however, the prosecutor only charged her

with the former count, that is, resisting a law enforcement officer with violence (Ex.

D).

On June 8, 2007, upon the written report of a court-appointed expert, the trial

court adjudged Petitioner incompetent to proceed and committed her to the

Department of Children and Families to attain competence to proceed (Ex. C).  On

June 18, 2007, the State and defense counsel jointly moved for a mental evaluation to

determine Petitioner's competency (Ex. E).  On June 22, 2007, the trial court ordered

the appointment of an expert to conduct a competency evaluation (Ex. F).

On August 14, 2007, with the circuit court "having been advised by the

Department of Children and Families, by and through the Administrator of the Florida

State Hospital, the facility in which the Defendant is currently being treated, the

above named Defendant no longer meets the criteria for continued commitment under

the provisions of Chapter 916, Florida Statutes," ordered a hearing to be held "on the

issues raised in the Administrator's report" (Ex. G).  A hearing was held on September

5, 2007 (Ex. H).  At the commencement of the hearing, both the State and defense

stipulated to the Hospital's report finding Petitioner competent to proceed (*id.*).

Petitioner, having executed a written plea and acknowledgment of rights form prior

to the hearing (Ex. I), entered a plea of nolo contendere to the charge of resisting a law

enforcement officer with violence (Ex. H).  The trial court conducted a colloquy and

accepted Petitioner's plea as "being entered into freely, intelligently, and voluntarily

and with a factual basis to support the charges" (*id.* at 3–6).  Prior to imposing

sentence, the court inquired whether Petitioner wished to address the court.  Petitioner

stated the following:

> I was taking my medication.  That was a misunderstanding that
> they had or someone had that I wasn't taking my medication, but I was.
> And I was seeing a doctor on a regular basis, a psychiatric nurse, and a
> licensed clinical social worker, so.
> . . . .
> I was very frightened.  I thought—I didn't realize there were
> warrants out for me.  My dad had called the police because he was upset
> with me over a minor thing.  And the police showed up, and it frightened
> me.  And I just left.  And then it was after that that I understand that they
> found out there were warrants for me.  They didn't come to the house to
> pick me up for warrants.  My dad had called and told them that I was
> mentally ill and wasn't taking my medicine because he was upset with
> me.  So, I didn't understand that there were warrants out for me.  And
> when they put me in the holding cell, they pepper sprayed me and tased
> me with a taser gun.  Then they started giving me water to put on my
> eyes, and then they stopped giving me water.  And then I started
> scooping it up off the floor to put on my eyes.  And that's when they said
> that I was expelling fluids at them.  And that is not true.

(Ex. H at 13–14).  After Petitioner addressed the court, the court adjudicated her guilty

and imposed sentence of 113 days in the county jail with credit for 113 days of time

served, and a three-year term of probation with special conditions that she (1) comply

with recommendations for her treatment and take her medication for her mental health

condition, (2) not return to Martin County except to answer the pending case and (3)

have no contact with the person who was the subject of the aggravated stalking charge

in the Martin County case (*id.* at 14).  The trial court advised Petitioner that she had

a right to appeal; that if she desired to do so, she needed to file a notice of appeal

within 30 days; and that if she could not afford a lawyer, the court would appoint one

for her at public expense (*id.* at 15).  The judgment of conviction was rendered on

September 5, 2007 (Ex. J).  Petitioner did not appeal the judgment.

On January 7, 2009, an affidavit of violation of probation ("VOP") was filed

(Ex. K).  The violation report charged Petitioner with the following:

> Violation of condition (1) of the Order of Probation by failing to make
> a full and truthful report to the probation officer on the form provided for
> that purpose and by failing to report to the probation office as directed,
> in that, on 1/1/09, the offender was instructed by Officer P. Morgan to
> report to the probation office on 1/5/09, in Quincy, Florida, and as
> grounds for belief that he [sic] offender violated her probation, Officer
> Al Joyner states that the offender failed to report as directed and as of
> 1/6/09, the offender has not reported as instructed or contacted the
> probation office.

Case No.:  4:14cv631/MW/EMT

(Ex. K).

An amended affidavit of VOP was filed on January 12, 2009, adding the

following charge:

> Violation of condition (3) of the Order of Probation by changing her
> residence without procuring the consent of the probation officer, and as
> grounds for belief that the offender violated her probation, Officer Al
> Joyner states that on or about 1/5/09, the offender did move from her last
> known place of residence at 11276 NW Lake Mystic Road, Bristol, FL
> without procuring the consent of the probation officer.  An attempt to
> contact the offender at her residence on 1/5/09, was unsuccessful and this
> officer was informed that the offender no longer lived at the above
> address and they did not know where she was living.  The offender's
> current whereabouts are unknown at this time.

(Ex. L).  Petitioner was arrested on the VOP warrant on July 2, 2009 (Ex. N).

On July 30, 2013, Petitioner filed pro se "Motion for Relief," in which she

requested that a "final disposition" be made on the VOP charge (Ex. O).  On August

14, 2013, Petitioner filed a pro se "Petition for Writ of Habeas Corpus" in the Liberty

County circuit court, but cited Florida Rule of Appellate Procedure 9.100 as its basis

(Ex. P).  The clerk of court assigned Case Number 2013-169-CA (*id.*).  On December

5, 2013, the Liberty County circuit court dismissed the petition on the following

grounds:

> In the instant habeas petition, Petitioner captions case 07CF60 and
> appears to seek relief from the detainer lodged against her in Liberty
> County Case 07CF60 with the Department of Corrections.  This habeas

petition proceeded separately from her Case 07CF60.  The Court takes judicial notice that the State Attorney is now actively prosecuting Petitioner on the charges in Case 07CF60.  Further, the docket in the aforementioned case reflects that on July 30, 2013, Petitioner filed a motion seeking similar relief, disposition of the probation violation charges.  As such, her claim is now mooted by the prosecution of the charges.

(Ex. S).  Petitioner appealed the decision to the Florida First District Court of Appeal

("First DCA"), but the First DCA dismissed the appeal on April 4, 2014, due to

Petitioner's failure to comply with a prior order of the court. (Ex. T).

Petitioner filed the instant federal habeas action on November 19, 2014 (ECF

No. 1 at 15).[2]  She asserts the following grounds for relief:

Ground One:  Ineffective assistance of counsel.

Dennis Cromley, a public defender, represented me.  I never met with him until the day I entered the plea.  He never provided me with the paperwork so I would be informed of the allegations against me.  He did not pursue the insanity defense even though I had been found insane/incompetent on this charge.

Ground Two:  Pleas not voluntary.

I was not properly medicated, mentally ill, and not fully informed of what I had been accused of.

---

[2] On  April 20, 2010, as amended on August 18, 2011, the Circuit Court in and for Martin County, Florida, imposed a twelve-year term of imprisonment in Case No. 2006-CF-1858 (*see* Exs. U, V, W, X).  It is this sentence that Petitioner is currently serving in the Florida Department of Corrections.

(ECF No. 1 at 5, 7).

II.    ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of

limitation applies to the filing of a habeas petition by a person in custody pursuant to

a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the applicant was prevented from filing by such State
> action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

Section 2244(d)(1).

Respondent argues that the appropriate statutory trigger for the federal

limitations period is the finality date of the judgment of conviction, pursuant to

Case No.:  4:14cv631/MW/EMT

§ 2244(d)(1)(A) (*see* ECF No. 16 at 8).  Petitioner does not argue that a different

statutory trigger applies, nor do the allegations of her § 2254 petition suggest that a

different trigger applies.

Petitioner did not appeal the judgment of conviction and sentence for resisting

arrest with violence, which was rendered September 5, 2007.  Therefore, the judgment

became final thirty days later, on October 6, 2007.[3]  *See* Gonzalez v. Thaler, — U.S.

—, 132 S. Ct. 641, 653, 181 L. Ed. 2d 619 (2012) ("[W]ith respect to a state prisoner

who does not seek review in a State's highest court, the judgment becomes 'final'

under § 2244(d)(1)(A) when the time for seeking such review expires[.]"); Hampton

v. State, 837 So. 2d 611 (Fla. 5th DCA 2003) (absent direct appeal, the judgment and

sentence became final 30 days after rendition); Davis v. State, 693 So. 2d 700 (Fla.

2d DCA 1997) (same); Gust v. State, 535 So. 2d 642 (Fla.1st DCA 1988) (same).  The

one-year deadline for filing a § 2254 petition expired one year later, on October 6,

2008.  *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period

should be calculated according to "anniversary method," under which limitations

---

[3] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation, and the last day of the period is included, so the federal limitations period began to run on October 6, 2007. *See* Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1283–84 (11th Cir. 2007) (citing Fed. R. Civ. P. 6(a)); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA).

period expires on anniversary of date it began to run) (citing <u>Ferreira v. Dep't of Corr.</u>, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).  On or before October 6, 2008,  Petitioner did not file any post-conviction application in state court that qualified for statutory tolling under § 2244(d)(2), nor did she file her § 2254 petition.  Therefore, it is untimely.

Petitioner argues she is entitled to review of her § 2254 petition through the "actual innocence" exception to the time bar (*see* ECF No. 1 at 13; *see also* ECF Nos. 19, 28).  In <u>McQuiggin v. Perkins</u>, — U.S. —, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that there is an "equitable exception" to the statute of limitations set forth in § 2244(d), but only when the petitioner presents new evidence that shows it is more likely than not that no reasonable juror would have convicted her.   133 S. Ct. at 1928, 1931, 1933.   The Court cautioned that "tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless [s]he persuades the district court that, in light of [ ] new evidence, no juror, acting reasonably, would have voted to find [her] guilty beyond a reasonable doubt.'"  *Id.* (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing <u>House v. Bell</u>, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

The Supreme Court stated in <u>Schlup</u>:

> a substantial claim that constitutional error has caused the conviction of
> an innocent person is extremely rare.  To be credible, such a claim
> requires [a] petitioner to support his allegations of constitutional error
> with new reliable evidence—whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence—that was not presented at trial.

513 U.S. at 327.  The Supreme Court has explained that "'actual innocence' means

factual innocence, not mere legal insufficiency."  <u>Bousley v. United States</u>, 523 U.S.

614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

Here, Petitioner was convicted of resisting an officer with violence, a violation

of Florida Statutes § 843.01.  Petitioner was guilty of that offense if the evidence

satisfied the following elements beyond a reasonable doubt:  (1) Petitioner knowingly

and willfully resisted or opposed an officer by offering or threatening to do him

violence or by doing violence to him; (2) at the time, the person was an officer and

was engaged in the lawful execution of a legal duty; and (3) at the time, Petitioner

knew that the person was an officer.  *See* Fla. Stat. § 843.01; Fla. Standard Jury

Instructions in Criminal Cases, Part Two:  Instructions on Crimes, Chp. 21, § 21.1.

In Petitioner's § 2254 petition and her responses to the motion to dismiss,

Petitioner alleges that the Sheriff of Liberty County and his deputies were corrupt; that

Deputy Phinney falsified his arrest report; and that she (Petitioner) was not aware of

the existence of the two outstanding warrants for her arrest at the time Deputy Phinney

attempted to arrest her on May 17, 2007 (*see* ECF No. 1 at 18; ECF No. 28 at 1, 4).

However, Petitioner does not dispute that the two outstanding warrants actually

existed, nor does she dispute that she knew that Deputy Phinney was an officer, and

that she resisted or "pulled away" from him when he attempted to arrest her on the

warrants (*see id.*).   Furthermore, although Petitioner refutes Deputy Phinney's

allegations with regard to her (Petitioner's) conduct after she was arrested and booked

into the Liberty County jail, the State did not charge Petitioner with any offense

relating to that post-arrest conduct; instead, Petitioner was charged and convicted only

of resisting the deputy while he was attempting to arrest her (*see* Ex. D).

Petitioner also appears to contend she is innocent because she was insane and

incompetent at the time she entered her nolo contendere plea (*see* ECF No. 28 at 1, 4).

However, Petitioner has proffered no evidence to refute the evidence in the state court

record that prior to entry of the plea, the Administrator of Florida State Hospital

reported to the trial court that Petitioner was competent to proceed, which Petitioner's

counsel admitted at the commencement of the plea proceeding on September 5, 2007

(*see* Ex. G, Ex. H at 3).

Petitioner has failed to demonstrate she is "actually innocent" of the charge of which she was convicted.  Therefore, she is not entitled to review of her § 2254 petition through the "actual innocence" exception to the time bar.

Petitioner's filings also include a litany of alleged injustices she has suffered over the past fourteen years (*see* ECF No. 1 at 16–31; ECF No. 28).  To the extent she intends these assertions as supporting a claim of equitable tolling, she has failed to demonstrate that she is entitled to equitable tolling  of the § 2254 limitations period.

"Because the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not bar the application of equitable tolling in an appropriate case."  Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157 (11th Cir. 2014) (citing Holland, 560 U.S. at 645). "[A] petitioner is entitled to equitable tolling only if [s]he shows (1) that she has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing."  Holland, 560 U.S. at 649.  As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly."  Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014).

Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the case. *See* Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); *see* Holland, 560 U.S. at 649–50 (clarifying that the exercise of a court's equity powers must be made on a case-by-case basis).  The petitioner has the burden of establishing her entitlement to equitable tolling; her supporting allegations must be specific and not conclusory.  Hutchinson, 677 F.3d at 1099.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."  Holland, 560 U.S. at 653; *see also* Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir. 2012) (per curiam) (acknowledging petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts").  Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.  Cole, 768 F.3d at 1158 (quotation marks and citation omitted).

Petitioner has not alleged the existence of any circumstance during the period October 6, 2007 to October 6, 2008, let alone an extraordinary one, that actually prevented her from filing a § 2254 petition.  Indeed, Petitioner does not allege she

made any attempt to file a § 2254 petition during that time, or that she even attempted to ascertain the federal deadline.  Petitioner thus failed to demonstrate she is entitled to equitable tolling of the federal limitations period.

## III.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.  Rule 11(a) additionally provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254

Cases.  If there is an objection to this recommendation by either party, that party may

bring this argument to the attention of the district judge in the objections permitted to

this report and recommendation.

       Accordingly, it is respectfully **RECOMMENDED**:

       1.     That Respondent's motion to dismiss (ECF No. 16) be **GRANTED**.

       2.     That the habeas petition (ECF No. 1) be **DISMISSED** with prejudice as

untimely.

       3.     That a certificate of appealability be **DENIED**.

       At Pensacola, Florida, this 9th day of February 2016.


                 /s/ *Elizabeth M. Timothy*
                 **ELIZABETH M. TIMOTHY**
                 **CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**